

Mark M. Kovacich
Lewis, Slovak & Kovacich, P.C.
P.O. Box 2325
Great Falls, MT 59403
(406) 761-5595

Michael J. George
Lucero & George, LLP
615 2nd Avenue North, Suite 200
Great Falls, MT 59401
(406) 771-1515

Attorneys for Plaintiff

347839

MONTANA EIGHTH JUDICIAL DISTRICT COURT, CASCADE COUNTY

| | |
|---|---|
| TIMOTHY S. McDOWELL, Personal Representative of the Estate of SUSAN K. McDOWELL, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, a Delaware for Profit Corporation; BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Profit Corporation; GREAT NORTHERN RAILWAY COMPANY, a Corporation for Profit; ROBINSON INSULATION COMPANY, a Montana Corporation; STATE OF MONTANA, a Governmental Entity; LIBBY PUBLIC SCHOOLS; LIBBY SCHOOL DISTRICT #4, ASA WOOD ELEMENTARY SCHOOL; and DOES A - Z, Inclusive;<br><br>Defendants. | CAUSE NO. **A D V - 1 4 - 3 1 5**<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, demanding trial by jury, and for his complaint against

the above named Defendants alleges:

## PARTIES

1.

Plaintiff Timothy S. McDowell is the surviving spouse and duly appointed Personal Representative of the Estate of Susan McDowell, Deceased. Plaintiff is a natural person, who is a citizen and resident of the State of Washington. At the time of her death, on November 6, 2012, Susan McDowell was a citizen and resident of the State of Washington.

2.

Defendant Burlington Northern Santa Fe Railway Company (BNSF) is a business corporation for profit organized under the laws of Delaware. BNSF does business within the State of Montana. BNSF is the surviving entity of the merger of defendant the Burlington Northern Railroad Company (BN) and the Atchison, Topeka and Santa Fe Railway Company (Santa Fe). As a result of the merger agreement between BN and Santa Fe and by operation of law BNSF assumed liability for all claims which could have been brought against BN. For purposes of this Complaint and Jury Demand, all allegations and claims against the BN are also allegations and claims against the BNSF, as successor corporation.

3.

Defendant BN was a business corporation for profit, organized and existing under the laws of Delaware. For many years BN did business within the State of Montana. Defendant BN engaged in conduct that resulted in the accrual of this tort action in Montana. Defendant BN is or was the surviving entity of the 1970 merger of defendant Great Northern Railway Company (Great Northern); Northern Pacific Railway Co.

COMPLAINT AND JURY DEMAND - 2

(Northern Pacific); the Chicago, Burlington & Quincy Railroad Co. (CB&Q); and the Spokane, Portland and Seattle Railway Co. (SP&S). As a result of said merger; as a result of the merger agreement between Great Northern, Northern Pacific, CB&Q, and SP&S; and by operation of law, BN assumed liability for all claims which could have been brought against defendant Great Northern. For purposes of this Complaint and Jury Demand, all allegations and claims against Great Northern are also allegations and claims against BNSF and BN, as successor corporations.

4.

Defendant Great Northern was a Montana business corporation for profit. For many years Great Northern did business within the State of Montana. Great Northern engaged in conduct that resulted in the accrual of this tort action in the State of Montana. [Hereinafter defendants BNSF, BN, and Great Northern may be referred to from time to time as the "railroad defendants."]

5.

During all times herein mentioned, the railroad defendants owned and operated a railroad system as a common carrier of freight in interstate commerce in Lincoln County and Cascade County, Montana.

6.

Defendant Robinson Insulation Company (Robinson Insulation) was a Montana business corporation for profit, that negligently and carelessly designed, developed, assembled, and operated a vermiculite expansion plant to expand asbestos contaminated vermiculite at its principal place of business in Great Falls, Cascade County, Montana.

COMPLAINT AND JURY DEMAND - 3

7.

Robinson Insulation engaged in conduct that resulted in accrual of this tort action in Cascade County, Montana.

8.

Defendant the State of Montana is a governmental entity.

9.

The State of Montana is liable for the unlawful conduct of The Department of Environmental Quality; the Montana State Board of Health; the Department of Public Health and Human Services; the Department of Labor and Industry; and the Montana State Department of Health, Division of Air Pollution Control and Industrial Hygiene.

10.

Libby Public Schools, Libby School District #4 and Asa Wood Elementary School are or were public schools in Lincoln County, Montana.

11.

The true names and capacities of the defendants named herein as Does A - Z, inclusive, are unknown to plaintiff at this time, who therefore brings this action against said defendants by fictitious name.  Plaintiff will seek leave to amend this complaint to state the true names and capacities of defendants Does A - Z when the same have been ascertained, together with further appropriate charging allegations. Plaintiff is informed, believes, and thereon alleges that each fictitiously named defendant may be legally responsible in some manner for the occurrences alleged herein and that plaintiff's damages as alleged herein may have been proximately caused in part by said defendants' unlawful acts or omissions.

**COMPLAINT AND JURY DEMAND - 4**

## JURISDICTION AND VENUE

12.

This court has subject matter jurisdiction over this action and personal jurisdiction over each of the parties.

13.

Venue in this action is proper in Cascade County, Montana, because one of the Defendants, Robinson Insulation, engaged in tortious conduct within Cascade County and is a resident of Cascade County.

## GENERAL ALLEGATIONS

14.

Asbestos is a deadly substance consisting of tiny needle like fibers that easily penetrate and lodge in the linings of lungs.  Human lungs are unable to remove asbestos speared into lung tissue.  The asbestos spears cannot be washed out of lung tissues by blood.  Affected lung areas become inflamed, in time heavily scarred, and ultimately nonfunctional.  For one with this disease process, it becomes increasingly more difficult to breathe.  Ultimately, the person suffocates.

15.

The sinister effects of asbestos exposure are compounded by the fact that diseases caused by asbestos have long latency periods.  It is not uncommon for persons to be first diagnosed with potentially fatal diseases many years following their initial exposure to asbestos.

16.

At all times relevant to this action, the defendants had actual knowledge that

**COMPLAINT AND JURY DEMAND - 5**

asbestos is an extremely hazardous substance and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

17.

As a child, from 1962 to 1964, Susan McDowell resided and recreated in proximity to the railroad defendants' tracks. As a result of railroad business activities Susan McDowell was exposed to deadly asbestos contaminated vermiculite which was negligently and recklessly transported, leaked, dropped, and discarded from rail cars used to transport vermiculite to and from expansion plants located throughout the United States.

18.

Susan McDowell was also exposed to defendant Robinson Insulation's unreasonably dangerous asbestos contaminated products, which Robinson Insulation unlawfully placed in the stream of commerce for use and consumption by the public.

19.

For many years, defendant Robinson Insulation obtained asbestos contaminated vermiculite in Lincoln County, Montana. Said vermiculite was transported by rail by the railroad defendants from Lincoln County to Great Falls, Cascade County, Montana, where defendant Robinson Insulation expanded the asbestos contaminated vermiculite and processed it into various manufactured products.

20.

After expanding the deadly asbestos contaminated vermiculite and processing it into manufactured products, defendant Robinson Insulation sold said vermiculite and vermiculite products for retail sale in Libby, Montana. Expanded asbestos contaminated

COMPLAINT AND JURY DEMAND - 6

vermiculite and vermiculite products were transported from Great Falls back to Libby by the railroad defendants and delivered for retail sale in Libby, Lincoln, Montana.

21.

For decades prior to 1990, Zonolite Company and W. R. Grace & Company (W. R. Grace) owned and operated a vermiculite mine and mill near Libby, Lincoln County, Montana. The vermiculite mined by Zonolite Company and W. R. Grace in Lincoln County was laced with deadly asbestos fibers that were released into air, soil, and water during mining and milling activities.

22.

The acts and omissions giving rise to the State of Montana's liability for Susan McDowell's mesothelioma and death and plaintiff's damages were carried out by the Department of Environmental Quality; the Department of Labor and Industry; the Department of Public Health and Human Services; the Montana State Board of Health; the Montana State Department of Health, Division of Air Pollution Control and Industrial Hygiene; and/or other agents, servants, and employees of the State of Montana. Each of these Departments and/or agents, servants, and employees is or was an institution and/or agent of the State of Montana. (The State of Montana and each of the Departments and their predecessors and successors will hereinafter be referred to collectively as the "State.")

23.

At all times relevant to this action, the State of Montana had actual knowledge that vermiculite, originating from the business activities of Zonolite Company and W. R. Grace & Company (hereinafter referred to from time to time as "Grace" or "W. R.

COMPLAINT AND JURY DEMAND - 7

Grace") in Lincoln County, was contaminated with deadly asbestos. The State had actual knowledge that asbestos was and is extremely hazardous and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

24.

Susan McDowell came into contact with workers from the vermiculite mine and mill owned and operated by Zonolite Company and W. R. Grace & Company. Workers and miners at the vermiculite mine and mill worked in an environment that caused them to be exposed to asbestos dust. As a result, workers went home with asbestos dust on their clothing and in their cars, thereby contaminating Susan McDowell and others in the Libby community with asbestos fibers. Susan McDowell was thereby exposed to asbestos fibers while going about daily activities of life in Libby, Montana.

25.

Without knowledge of the nature and extent of the asbestos hazard, Susan McDowell and others were denied the options of avoiding exposure, demanding protective devices, demanding safer operations, or otherwise protecting themselves from the abnormally dangerous activities originating from the mine.

26.

Since the 1950's, the State has been responsible for oversight of the vermiculite mine and mining facilities located in Lincoln County, Montana, and owned by Zonolite Company. (In 1963, W. R. Grace & Company acquired ownership and took over operation of the Libby vermiculite mine and mill from Zonolite Company.)

**COMPLAINT AND JURY DEMAND - 8**

27.

RCM 1947 § 69-105 (effective 1955 to 1967) provided the State Board of Health "shall . . . have general supervision of the interests of health and life of the citizens."

28.

RCM 1947 § 69-201 (effective 1955 to 1967) provided that the "Board . . . shall . . . execute all of the duties in the field of industrial hygiene."

29.

RCM 1947 § 69-4106 (effective 1967 to 1971) provided that the Board "shall . . . (d) . . . enforce . . . for the preservation of public health and prevention of disease."

30.

RCM 1947 § 69-4207, now § 50-70-102, MCA (effective 1971 to date) provides for a State policy that "(1) will protect human health and safety . . . (2) [and for a ] . . . program of abatement . . . of occupational diseases."

31.

RCM 1947 69-105 (effective 1955 to 1967) provided that the Board of Health "shall make sanitary investigations and inquiries regarding . . . employment . . .."

32.

RCM 1947 § 69-202 (effective 1955 to 1967) provided that the Board of Health "shall . . . (3) make investigations of the sanitary conditions . . . in the various industries."

33.

RCM 1947 § 69-4203 (effective 1967 to 1971) provided that the Board of Health "shall . . . investigate the conditions of work . . .."

34.

RCM 1947  § 69-4110, now § 50-1-202, MCA (effective 1967 to date) provides
that the Board "shall . . . (2) study conditions effecting citizens . . . (3) make
investigations . . .."

35.

RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974 - 1999) provided
that the Board "shall . . . (6) determine . . . degree of hazard at any workplace."

36.

RCM 1947 § 69-202 (effective 1955 to 1967) provided that the Board "shall . . .
(5) . . . work with such industries to remedy unsanitary conditions."

37.

RCM 1947 § 69-4203 (effective 1967 to 1971) provided that the Board "shall . . .
(4) . . . cooperate with the industry . . . in . . . correcting conditions which are hazardous
to health."

38.

RCM 1947 § 69-4211, now § 50-70-105, MCA (effective 1971 to 1999) provided
that the Board "shall . . . (3) . . . issue orders necessary to carry out this act."

39.

RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974 to 1999) provided
that the Board "shall (1) enforce board orders . . . (3) develop . . . plan for . . . abatement
. . . of occupational diseases."

40.

The Montana Constitution, Article IX § 1(1) provides "the State and each person

shall maintain and improve a clean and healthful environment in Montana . . .."

41.

RCM 1947 § 69-105 (effective 1955 to 1967) provides that the Board "shall gather information . . . as it may deem proper for diffusion."

42.

RCM 1947 § 69-4110, now § 50-1-202, MCA (effective 1967 to date) provides that the Board "shall . . . (3) make investigations, disseminate information . . .."

43.

RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974 to 1999) provides that the Board "shall . . . (7) disseminate information".

44.

RCM 1947 § 69-4216(1), now § 50-70-117, MCA(1) (effective 1971) provides that, in the absence of a generalized hazardous emission in the workplace, if emissions from an operation cause imminent danger to human health, the State may order the person responsible for the operation to reduce or discontinue emissions immediately.

45.

RCM 1947 § 69-4216(2), now § 50-70-117, MCA(2) (effective 1971) provides that if a hazard at a workplace exists that creates an emergency requiring immediate action to protect human health, the state shall order persons causing or contributing to the hazard to reduce or discontinue immediately the emissions creating the hazard.

46.

In 1956, the State of Montana began conducting industrial hygiene studies at the vermiculite mine and mill operation near Libby, Lincoln County, Montana.  Over the next

COMPLAINT AND JURY DEMAND - 11

twelve years, that is from 1956 to 1968, the State conducted at least five separate
industrial hygiene studies at said mine and mill and corresponded with Grace
management officials concerning Grace's asbestos health hazard on at least three other
occasions.

47.

The 1956 industrial hygiene study by the State Board of Health, Division of
Disease Control, of the Zonolite mine and mill operation was undertaken "to determine if
any of the components of this company were detrimental to the health of the
employees."  The 1956 report, p. 3, found high dust levels, that the dust contained
asbestos, and that "the asbestos dust and the dust in the air is of considerable toxicity."
The report cited the 1954 edition of Drinker and Hatch, Industrial Dust, which describes
the lung damage done by asbestosis as "permanent" (p. 37).  Drinker and Hatch note
the 1947 total of 160 deaths from asbestosis in Great Britain (p. 39).  Drinker and Hatch
also demonstrate a ten times greater than normal incidence of lung cancer in asbestosis
cases (p. 46).  The State's 1956 report found dust levels at the Libby vermiculite mine
and mill greatly exceeding the asbestos limit, and recommended dust control measures.
The 1956 report, p. 6, states:

> Full recognition should be given to the fact that direct control measures
> alone are usually not enough to insure safe working conditions.  The
> method of operations, proper maintenance of equipment and of
> housekeeping are equally essential to maintain healthful conditions.
>
> That until such time as the repair and maintenance of both the exhaust
> and ore conveying systems have been complete, all the men in the dry mill
> be provided with and required to wear an adequate respirator.

The State took no further action concerning the asbestos threat in Libby during the

remainder of 1956 or during 1957.

48.

In 1958, the State Board of Health, Division of Disease Control, undertook
another industrial hygiene study of the Zonolite mine and mill operation "to determine if
any of the components of this company found to be detrimental to the health of the
employees during the last study in August, 1956 had been reduced or alleviated since
that time." The report again found asbestos dust levels greatly exceeding the asbestos
limit, and recommended dust control measures. The report cites medical literature
showing that asbestosis is "a progressive disease with a bad prognosis," often fatal.
The report, at p. 8, finds that asbestos dust "concentrations had, as yet, not been
reduced to a satisfactory level over all . . .. The dry mill still required a considerable
amount of work to reduce the dust in this area to an acceptable level." No further action
was taken by State Board of Health, Division of Disease Control, in 1958, 1959, 1960, or
1961.

49.

In 1959, the Montana State Tuberculosis Sanitarium treated Glenn Taylor, a
Libby Zonolite mine worker, for shortness of breath and asbestosis.

50.

In 1961, the State, through formal death certificate reporting procedures, had
notice that Glenn Taylor, a millwright at Zonolite Company died of asbestosis, and that
Charles Wagner, a mechanic at Zonolite Company in Libby, died of pulmonary fibrosis.

51.

In 1962, the State Board of Health, Division of Disease Control, undertook an

**COMPLAINT AND JURY DEMAND - 13**

industrial hygiene study of the Zonolite mine and mill operation in Lincoln County, Montana "to determine if any of the components of the operations continued to be a threat to the health of the employees."  The report again found dust levels far in excess of the asbestos limit, and recommended dust control measures.  The report concludes "as indicated in the findings of this study, it appeared that no progress had been made in reducing dust concentrations in the dry mill to an acceptable level and that, indeed, the dust concentrations had been increased, substantially, over those in the past."

52.

In 1963, the State Board of health, Division of Disease Control, undertook an industrial hygiene study of the Grace/Zonolite mine and mill.  The report again found dust levels greatly exceeding the asbestos limit, and recommended dust control measures.  The report, at p. 3, found a "hazardous condition existing at this plant."  No further action was taken in 1963.

53.

In April, 1964, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the vermiculite mine and mill "to determine if compliance with previous recommendations for the control of dust had been achieved."  The report again found asbestos dust levels greatly exceeding safe limits, and recommended asbestos dust control measures.  The report also cited an article by Dr. Irving Selikoff (1964), finding dangerous levels of asbestos disease in asbestos insulation workers with "light intermittent exposure to asbestos."  The State knew Libby workers had heavy and frequent exposure to asbestos.  The 1964 report states at p. 3. "the asbestos content of the material with which you are working appears to provide some serious potential for

**COMPLAINT AND JURY DEMAND - 14**

the development of disease if not properly controlled. In addition, the discharge of large volumes of asbestos-laden dust at ground levels sets up a condition where all members of the plant can be exposed in addition to those who work in the dry mill." The 1964 report, p. 3, also warns of possible widespread carcinogenic air pollution."

54.

In September, 1964, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the Grace/Zonolite mine and mill "to determine if the concentrations were excessive as has been found in many previous studies." The report again found dust levels greatly exceeding the asbestos limit, and recommended dust control measures. The report states at p. 3 "the dust discharged at ground level from the main dust collection fan was continuously contaminating the whole plant work area and needs to be either raised substantially so the dust-laden air discharges substantially above the plant area or that cleaning be provided. There was much reentry of this dust into the working environment." The report concludes at p. 3 with the "hope that continued work to reduce dust concentrations will be done and that a continuous operation at acceptable levels will be achieved soon."

55.

In 1964, the State, through formal death certificate reporting procedures, had notice that Albert Barney, a mill worker at Zonolite in Libby, Montana died of cor-pulmonale.

56.

In 1966, the State, through formal death certificate reporting procedures, had notice that Walter McQueen, a miner from Libby died of asbestosis.

**COMPLAINT AND JURY DEMAND - 15**

57.

In 1967, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the Grace/Zonolite mine and mill "to determine compliance with previous recommendations." The report, at p. 2, concluded "as in the past, the need for particularly close attention to the functioning of the dust control system, condition of duct work, . . . was apparent. It was also apparent that a strict housekeeping program must be maintained."

58.

In November 1967, evidence was presented to the Chairman of the State Industrial Accident Board that another worker at the Grace/Zonolite mine and mill had been diagnosed with asbestosis from work in the warehouse.

59.

By 1968, the State's reports to W. R. Grace discussed the direct link between exposures to the zonolite rnines' asbestos contaminated vermiculite and terminal lung cancers and stated that asbestos dust was of "considerable toxicity and that workers exposed to the dust were looking at serious lung and heart disease." This information was concealed from the public. In bold letters, the State wrote on many of the documents:

**"THIS REPORT IS CONFIDENTIAL AND IS NOT FOR DISTRIBUTION EXCEPT TO THE MANAGEMENT OF THE ZONOLITE COMPANY."**

60.

All of the reports and correspondence from the State to Zonolite Company or to W. R. Grace were directed exclusively and confidentially to the management of Zonolite

COMPLAINT AND JURY DEMAND - 16

Company and/or Grace. The State authored multiple industrial hygiene reports concerning the vermiculite mine on Zonolite Mountain and made it clear on the cover of each such report that these industrial hygiene reports were not to be distributed to anyone other than the management of Grace and/or Zonolite Company.

61.

Each of the above described industrial hygiene study reports prepared by the State discussed the high dust concentrations and the high asbestos content of the dust. Beginning in 1956, the reports discussed the extremely toxic nature of the asbestos dust and the debilitating and life threatening nature of the lung disease caused by exposure to asbestos.

62.

By 1971, 14 workers at the Grace mine and mill had died of asbestos disease.

63.

In 1974, the Montana State Department of Health performed an investigation of the airborne asbestos exposure at the Grace mine and mill. No action was taken to protect workers, their families, and the public.

64.

From 1967 to about 1974, Grace regularly reported on the status of dust control at its operations in Libby to the State.

65.

All of the above described reports of the Division of Disease Control, were delivered to W. R. Grace, or its predecessor. None of the reports were made public, nor were the Grace workers or their families warned of what the State had found.

COMPLAINT AND JURY DEMAND - 17

66.

From 1971 to 1976, a number of federal agency inspections of the Grace mine and mill showed violations of asbestos dust control requirements. The State was either a participant in said inspections or was copied in on the reports of said inspections. Federal inspections in 1971, 1972, 1973, 1974 and 1975 found dangerous levels of asbestos dust at the Grace mine and mill. Again the State did nothing to warn the workers, their families, or the public of the dangers of asbestos disease.

67.

From 1976 to a date after 1990, the State continued to inspect the Grace mine and mill for occupational health hazards. In the 1980s until 1998, the State had many occasions to review and act upon matters relating to Grace operations. The State did not warn or act to protect Susan McDowell or other members of the public.

68.

The State has known for decades that the asbestos dust released into the air at Libby and in Lincoln County was of "considerable toxicity and that workers exposed to the dust were looking at serious lung and heart disease." The State has also known for decades of the asbestos-cancer link at the Zonolite Company and Grace Libby facility and that Libby workers and their families were at increased risk for developing asbestosis and lung cancer.

69.

The State has known for decades that extended exposure to asbestos at the Grace Libby facility and in Lincoln County was unreasonably dangerous and hazardous to the health of workers, their families, and the public at large, but the State failed to

COMPLAINT AND JURY DEMAND - 18

make this information public. Rather than enforcing the law by compelling Zonolite

Company and Grace to clean up their deadly operations, the State effectively became

the accomplice of Zonolite Company and Grace and aided and abetted Grace's

concealment of this enormous public health problem. Lack of public knowledge of the

enormity of the Libby asbestos disaster continued until 1999 when media reports began

to expose the cover up and the extensive harm it had caused.

70.

The State's complicity in Grace's egregious misconduct continued well into the

1990's. In its own internal memo dated March 4, 1992, the Montana Occupational

Health Bureau stated:

> Ten to twenty workers are dismantling the mine and buildings with
> asbestos dust throughout, without protective clothing or gear. This activity
> has occurred at the industrial area already and is proceeding to the
> screening and processing plant. The ground is covered with
> vermiculite/asbestos. Rainy Creek, approximately 50-100 feet from the
> screening plant, has asbestos getting into it from the activities that are
> occurring. Four grain storage bins, used to store the ore, are located along
> the Kooteneai River, of which, the bin's integrity are questionable.

The citizens of Lincoln County continued to be exposed to abnormally high levels of

asbestos as a result of Grace's continued operations in Lincoln County into the 1990's.

Nothing was done by the State to notify or to protect the public from the perils of this

extraordinary human health hazard.

71.

In 1994, Michael Crill, a former Grace employee, warned the State that the

people who had purchased Grace's "screening plant property," along the banks of the

Kooteneai River, were in grave danger because of the asbestos waste located there.

Mr. Crill also advised the State that clouds of asbestos contaminated dust were being created when logging trucks used the road leading to and from the Zonolite Mountain mine site. Mr. Crill actually met with a State inspector concerning the asbestos contamination. The State inspector promised to take action on Mr. Crill's information but never did anything to warn the public or correct the problem.

72.

In 1995, Mr. Crill realized that the State had not acted on the critically important information he had provided. Therefore, he wrote to the United States Environmental Protection Agency (EPA). The EPA notified the State. The State did nothing to address or to correct the hazardous situation.

73.

In approximately 1998, another Libby citizen, Gayla Bennefield, notified the Montana Governor's office that the people of Libby were in danger because of the asbestos hazards created by Grace's operations. Again, nothing was done and nothing was made public.

74.

In the Fall of 1999, the Seattle Post Intelligencer and several Montana newspapers, broke the story that mining and milling operations on Zonolite Mountain had subjected the citizens in and around Libby, Montana to grave health risks.

75.

Subsequently, the EPA conducted air tests and took soil samples disclosing the enormity of the human health problem in Libby and Lincoln County, Montana. The EPA reported its findings in May, 2000, unfortunately too late for many Lincoln County

COMPLAINT AND JURY DEMAND - 20

citizens, who had already contracted deadly asbestos related diseases. The May, 2000

EPA report stated that cumulative exposures to tremolite fibers at facilities in Lincoln

County are likely to present an ongoing endangerment of residents, workers and visitors

in the area. The EPA's sampling efforts demonstrated "abundance of fibrous minerals in

media sampled." The report went on to state as follows:

> The chemical nature of the fibers identify them as asbestiform amphiboles
> known to cause multiple cancers in humans and animals at multiple target
> organs. These fibers are particularly dangerous when inhaled and are
> directly related to production of mesothelioma, a particularly lethal
> neoplasm of the mesodermal lining of the lung. Additionally, amphibole
> mineral fibers can cause a wide variety of malignant lung tumors.

In addition to the carcinogenic effects associated with tremolite fibers, non-malignant

asbestosis can result in debilitating and lethal respiratory disease. Tremolite fibers can

cause thickening and fibrosis of the pleural lining of the lung and scarring of the lung

parenchyma. The resulting loss of lung compliance and respiratory capacity can

progress over the course of many years.

76.

The State did nothing to disseminate to the public this critically important

information relating to the extreme and imminent human health hazards associated with

vermiculite mining, activities in Lincoln County, Montana. The State thereby aided and

abetted Zonolite Company and Grace in the concealment of this human health disaster

from the public. The State has acted in concert with Grace and Zonolite Company to

create, to enhance, and to conceal the human health disaster from the public. The

State's misconduct continued for decades. The State conducted meetings with high

level Grace officers and officials, but never notified Susan McDowell, Grace workers,

their families, or the public concerning the nature and extent of harm from exposure to Grace's asbestos dust.  As a result Susan McDowell and the public remained ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by Zonolite and Grace until it was too late to protect themselves from harm.

77.

The State's acts and omissions alleged herein constitute gross negligence and reckless disregard for obligations the State owes to its citizens, including the plaintiff and Susan McDowell.  Said acts and omissions resulted in exposure of Susan McDowell to deadly asbestos fibers.  Asbestos poisoning could have been substantially and meaningfully reduced or eliminated for individuals living and working in Lincoln County had the State acted reasonably and responsibly.

78.

During 1962 to 1964, Susan McDowell was a minor child and a student at Asa Wood Elementary School of Libby, Montana, where she was exposed to abnormally dangerous and ultra hazardous asbestos fibers and asbestos contaminated vermiculite that was discarded, stored or piled on Asa Wood Elementary School grounds.

79.

During the time Susan McDowell was an elementary student at Asa Wood Elementary School, from 1962 to 1964, the Libby Schools knew the Asa Wood Elementary School grounds were contaminated with vermiculite.  Libby Schools knew or should have known that asbestos was and is extremely hazardous and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and

**COMPLAINT AND JURY DEMAND - 22**

mesothelioma.

80.

The defendants' unlawful conduct caused Susan McDowell's exposure and/or ingestion of unreasonably dangerous asbestos contaminated vermiculite as described herein, ultimately causing her to contract asbestos related restrictive lung disease and mesothelioma.

81.

At all times during Susan McDowell's period of exposure to asbestos contaminated vermiculite, generated and released by defendants' business activities, the defendants knew that extended exposure to asbestos was unreasonably dangerous and hazardous to human health.  Nevertheless, the defendants concealed and failed to disclose such knowledge to Grace employees, the public at large, and Susan McDowell. Defendants gave no indication that it was unsafe and a serious health hazard to be exposed to asbestos generated and released by defendants' abnormally dangerous business activities.  Susan McDowell was at all times ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by defendants' abnormally dangerous business activities.

82.

As a direct and proximate result of the defendants' unlawful conduct, Susan McDowell was exposed to deadly asbestos contaminated vermiculite.

83.

As a direct and proximate result of her exposure to asbestos-laced vermiculite generated and released by defendants' business activities, Susan McDowell contracted

mesothelioma and died an excruciatingly painful death.

84.

All of the above referenced acts and omissions were maliciously done by defendants with the intent that innocent persons, including Susan McDowell, would remain unaware of the hazards and extreme and abnormally dangerous health and safety risks associated with exposure to asbestos resulting from the defendants' business activities .

85.

Each act of negligence, carelessness, and recklessness; each intentional and malicious act or omission; and each violation of law or safety regulation alleged herein was committed by defendants and/or an employee or agent of the defendants, who was acting within the course and scope of employment or agency with said defendants, and was acting in the furtherance of the business interests of said defendants. Each negligent, careless, reckless, intentional, malicious, and unlawful act or omission alleged herein is imputable to the defendants.

## **FIRST CAUSE OF ACTION**

(Negligence - Against the Railroad Defendants and Does A-Z)

Plaintiff realleges paragraphs 1 through 85 of this Complaint and Jury Demand and adopts the same as if fully set forth in this First Cause of Action.

86.

The railroad defendants and Does A-Z owed Susan McDowell a duty to act with reasonable care concerning their business operations, so as not to jeopardize her health and welfare.

**COMPLAINT AND JURY DEMAND - 24**

87.

The railroad defendants and Does A-Z breached their duty of care by negligently, carelessly and recklessly generating, handling, storing, releasing, disposing of, and failing to control and contain unreasonably dangerous and hazardous asbestos created by and/or resulting from their for business operations.

88.

As a direct result of the breach of their duty of due care owed by the railroad defendants and Does A-Z, and the resulting release of asbestos, Susan McDowell was exposed to asbestos.

89.

The railroad defendants and Does A-Z knew that exposure to or ingestion of asbestos was unreasonably dangerous and hazardous to human health.  The railroad defendants and Does A-Z knew that citizens of Libby were inhaling harmful asbestos and vermiculite, but concealed such knowledge.  The railroad defendants and Does A-Z failed to protect Susan McDowell and the public from exposure to unreasonably dangerous and hazardous asbestos, the exposure to which was created by and resulted from these defendants' business operations.

90.

The railroad defendants and Does A-Z breached their duty of care to Susan McDowell by causing her to be exposed to deadly asbestos and/or asbestos contaminated materials and products produced and/or released as a result of these defendants' abnormally dangerous business activities, thereby causing Susan McDowell's mesothelioma and death.

**COMPLAINT AND JURY DEMAND - 25**

91.

Although the railroad defendants and Does A-Z knew or had ample reason to know that their acts or omissions created a high degree of risk and harm to Susan McDowell and others, these defendants deliberately acted in conscious disregard of and indifference to the risk imposed by Susan McDowell's continued exposure to asbestos.

92.

The negligence of the railroad defendants and Does A-Z, in addition to that hereinabove alleged, included:

(a)     Creating defective and unreasonably dangerous conditions;

(b)     Failing to properly inspect for unsafe conditions related to asbestos and asbestos contaminated vermiculite;

(c)     Failing to correct unsafe conditions;

(d)     Failing to warn of the hazards associated with exposure to asbestos and asbestos contaminated vermiculite;

(e)     Failing to provide proper safeguards against exposure to asbestos and asbestos contaminated vermiculite;

(f)     Failing to provide proper safeguards against release of an abnormally dangerous substance under their control;

(g)     Improper and negligent supervision, which permitted the ultrahazardous and dangerous condition and exposure to persist;

(h)     Failing to disseminate the asbestos and/or asbestos contaminated vermiculite hazard information to the public; and/or

(I)     Failing to inform Susan McDowell, or seeing that she was informed, of the

**COMPLAINT AND JURY DEMAND - 26**

extreme asbestosis and cancer risk of asbestos.

93.

As a direct and proximate result of the negligence of the railroad defendants and Does A-Z, Susan McDowell contracted mesothelioma and died an excruciatingly painful death. As a direct and proximate result of said defendants' negligence, Susan McDowell, her loved ones and her estate sustained damages as herein alleged.

## SECOND CAUSE OF ACTION

(Common Law Strict Liability - Against Railroad Defendants)

Plaintiff realleges paragraphs 1 through 93 of the First Cause of Action and adopts the same as if fully set forth in this Second Cause of Action.

94.

The railroad defendants engaged in abnormally dangerous business activities involving the production, manufacture, generation, sale, distribution, transportation, and/or use of asbestos products and materials. The railroad defendants failed to protect Susan McDowell from exposure to asbestos that escaped from such business activities.

95.

The railroad defendants' business activities, which caused exposure of Susan McDowell to asbestos, are abnormally dangerous activities in that:

(a)     there exists a high degree of prior, present and continuing contamination in the form of exceedingly toxic asbestos, which created an unacceptable risk of harm to Susan McDowell; and

(b)     there is a strong likelihood that the harm resulting from prior, present, and future exposure to asbestos is great.

**COMPLAINT AND JURY DEMAND - 27**

96.

The railroad defendants are strictly liable to the Susan McDowell for the damages caused by exposure to deadly asbestos caused by said abnormally dangerous business activities.

97.

As a direct and proximate result of the railroad defendants' unlawful and unreasonably dangerous conduct and abnormally dangerous activities, Susan McDowell contracted mesothelioma and died an excruciatingly painful death. As a direct and proximate result of said defendant's unlawful and unreasonably dangerous conduct and abnormally dangerous activities, Susan McDowell, her loved ones and her estate sustained damages as herein alleged.

### THIRD CAUSE OF ACTION

(Strict Products Liability - Against Defendant Robinson

Insulation Company and Does A-Z)

Plaintiff realleges Paragraphs 1 through 97 of the Second Cause of Action and adopts the same as if fully set forth in this Third Cause of Action.

98.

At times relevant to this action, defendant Robinson Insulation and, on information and belief, Does A-Z were engaged in the business of manufacturing, fabricating, modifying, expanding, labeling, distributing, supplying, selling, marketing, packaging, and/or advertising multiple products containing vermiculite and/or asbestos. Said vermiculite was laced with deadly asbestos.

99.

Defendant Robinson Insulation and defendants Does A-Z knew and intended that the above referenced asbestos contaminated products would be used without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

100.

Defendant Robinson Insulation and defendants Does A-Z distributed and/or sold said asbestos and vermiculite products to the public and to Susan McDowell and her family.

101.

Said asbestos contaminated products were defective and unreasonably dangerous for their intended purpose in that inhalation of asbestos fibers causes serious disease and/or death to humans. The defect existed in said products at the time they left the possession of said defendants. Said products did, in fact, cause injury and damage to Susan McDowell, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and unreasonably dangerous for use.

102.

Susan McDowell and her family did not know of the substantial danger of using said asbestos-laced products, nor was said danger readily recognizable. Defendant Robinson Insulation and defendants Does A-Z further failed to warn adequately of the risk of exposure to the unreasonably dangerous asbestos contaminated products to which Susan McDowell was exposed.

**COMPLAINT AND JURY DEMAND - 29**

103.

As a direct and proximate result of exposure to the asbestos contaminated products of Robinson Insulation and Does A-Z, Susan McDowell contracted mesothelioma and died an excruciatingly painful death. As a direct and proximate result of exposure to said unreasonably dangerous asbestos contaminated products, Susan McDowell, her loved ones and her estate sustained damages as herein alleged.

## FOURTH CAUSE OF ACTION

(Negligence - Against the State of Montana)

Plaintiff realleges paragraphs 1 through 103 of the Third Cause of Action and adopts the same as if fully set forth in this Fourth Cause of Action.

104.

Susan McDowell was at all times a member of the class of persons the above referenced statutes intended to protect from exposure to toxic asbestos dust, found hazardous by the State Board of Health, Division of Disease Control.

105.

At all times pertinent herein, the State owed a continuing duty to Susan McDowell to advise her of the results of its studies and research which directly and substantially affected her health and to otherwise take reasonable action to protect and to warn her and others who were at a foreseeable risk of harm.

106.

The State undertook specific action concerning measures purportedly taken to protect Susan McDowell and others from exposure to deadly asbestos contaminated vermiculite from the Zonolite and Grace vermiculite mining facilities in Lincoln County,

COMPLAINT AND JURY DEMAND - 30

Montana. When the State undertook to inspect and regulate the working conditions at Grace's operation, it assumed a duty to do so with care. The State had a duty to conduct inspections and follow up activities in a reasonable manner so as to protect Susan McDowell and others from the dangers the State discovered at Grace's operation.

107.

The State failed to act with due and reasonable care and failed to take sufficient action to protect Susan McDowell and the public from the hazards of asbestos exposure.

108.

The State failed to warn Susan McDowell of the hazards of asbestos exposure caused by the release of asbestos fibers from Grace's vermiculite mine and mill.

109.

The State breached its duties of care to Susan McDowell by failing to disseminate asbestos health hazard information to her; failing to warn her of the hazards associated with exposure to Grace's asbestos contaminated vermiculite; failing to inform her, or seeing that she was informed, of the asbestosis and cancer risk associated with exposure to Grace's asbestos; failing to enforce its rules and orders against Grace; communicating "confidentially" with Grace regarding the hazards of its workplace thereby approving and assisting with concealment of deadly work conditions; and failing to take any other reasonable action to protect Susan McDowell from the grave danger the State discovered and observed for many years at Grace's facilities.

110.

The State's negligence, in addition to that herein above alleged, included:

(a)    Failing to correct unsafe conditions;

(b)     Failing to warn of the dangers of asbestos;

(c)     Permitting the ultrahazardous and dangerous condition to persist;

(d)     Failing to warn Susan McDowell and the public of the hazards associated with exposure to asbestos contaminated vermiculite;

(e)     Failing to disseminate asbestos hazard information to the public;

(f)     Failing to inform Susan McDowell, or seeing that she was informed, of the extreme asbestosis and cancer risk of asbestos contaminated vermiculite; and/or

(g)     Failing to enforce and/or comply with rules, orders, and statutes thereby aiding and abetting Grace in the concealment of abnormally dangerous business activities for profit in Lincoln County, Montana.

111.

As a result of the State's negligence and unlawful conduct, Susan McDowell and her family were deprived of the opportunity to make an informed decision about where they lived, and she was exposed to deadly asbestos contaminated vermiculite dust.  Had the State acted reasonably and had information been timely conveyed to Susan McDowell and the public, she could have avoided the asbestos exposure that caused her mesothelioma.

112.

As a direct and proximate result of the State's negligent and unlawful conduct, as alleged herein, Susan McDowell contracted mesothelioma and died an excruciatingly painful death.  As a direct and proximate result of the State's negligent and unlawful conduct, Susan McDowell, her loved ones and her estate sustained damages as herein alleged.

## FIFTH CAUSE OF ACTION

(Breach of Statutory Duties - Against the State of Montana)

Plaintiff realleges paragraphs 1 through 112 of the Fourth Cause of Action and adopts the same as if fully set forth in this Fifth Cause of Action.

113.

At times relevant herein, the State owed statutory duties to Susan McDowell, as set forth herein, regarding the hazardous conditions at and the health hazard caused by releases of asbestos contaminated vermiculite from Grace's Lincoln County facilities.

114.

Among other things, the State was statutorily required to investigate and to determine hazards in Montana workplaces, to remedy unsanitary or hazardous conditions in the workplaces, to disseminate information regarding said hazardous conditions, and to enforce laws, regulations and orders intended to protect Montana workers, their families, and the public from hazardous work conditions.

115.

The State breached its statutory duties by failing to disseminate asbestos health hazard information to Susan McDowell; failing to warn her of the hazards associated with exposure to Grace mining operations and asbestos contaminated vermiculite; failing to inform her of the extreme asbestosis and cancer risk associated with exposure to Grace asbestos; and failing to enforce its rules and orders against Grace.

116.

The State communicated "confidentially" with Grace regarding the human health hazards of its workplace, thereby approving and assisting the concealment of deadly

COMPLAINT AND JURY DEMAND - 33

work conditions, and failed to take any reasonable action to protect Susan McDowell from the grave danger the State discovered and observed over a period of many years at Grace's facilities.

117.

As a direct result of the State's breach of its statutory duties and its unlawful conduct as alleged in this Fifth Cause of Action, Susan McDowell contracted mesothelioma and died an excruciatingly painful death. As a direct and proximate result of said statutory breaches and unlawful conduct, Susan McDowell, her loved ones and her estate sustained damages as herein alleged.

## SIXTH CAUSE OF ACTION

(Civil Aiding and Abetting - Against the State of Montana)

Plaintiff realleges paragraphs 1 through 117 of Fifth Cause of Action and adopts the same as if fully set forth in this Sixth Cause of Action.

118.

Defendant State of Montana knew for many years the working conditions at Zonolite Company's and Grace's facilities were extremely hazardous and knew the workers, their families, and the community were being exposed to deadly levels of asbestos.

119.

The State also knew that Grace and Zonolite Company were in fact poisoning the community of Libby, Lincoln County, Montana.

120.

The State also knew for years that Grace and Zonolite Company did not disclose

**COMPLAINT AND JURY DEMAND - 34**

to the public the unreasonable nature of their business activities and the grave human health hazard associated with the asbestos contaminated vermiculite they produced.

121.

Nevertheless, the State aided Grace and Zonolite Company in poisoning and contaminating the Libby community by affirmatively assisting Grace and Zonolite Company in the concealment of this health hazard from the public and Susan McDowell.

122.

The State generated multiple secret and confidential documents concerning the contamination. The State communicated the contents of those documents only to Grace and Zonolite Company in a concerted effort to insure that the public could not discover the enormous health hazard in Libby.

123.

The State provided substantial assistance and encouragement to Zonolite Company's and Grace's misconduct by allowing them to continue operating their hazardous facilities for decades and by allowing and assisting with the concealment of the dangerous nature of the operation.

124.

The State aided and abetted Zonolite Company's and Grace's misconduct and is therefore vicariously liable for their actions and responsible for Susan McDowell's resulting mesothelioma.

125.

As a direct result of the State's aiding and abetting the unlawful conduct of Grace and Zonolite Company, Susan McDowell was exposed to deadly asbestos contaminated

COMPLAINT AND JURY DEMAND - 35

vermiculite dust. Had the State acted properly and timely conveyed truthful information to Susan McDowell and the public, she, her family and others could have avoided the direct and substantial asbestos exposure which caused their asbestos related lung disease.

126.

The State's unlawful conduct by aiding and abetting Grace and Zonolite was a proximate cause of Susan McDowell's mesothelioma. As a direct and proximate result of said unlawful conduct, Susan McDowell experienced an excruciatingly painful death, and she, her loved ones and her estate sustained damages as herein alleged.

## **SEVENTH CAUSE OF ACTION**

(Directing or Permitting Tortious Conduct - Against the State of Montana)

Plaintiff realleges paragraphs 1 through 126 of the Sixth Cause of Action and adopts the same as if fully set forth in this Seventh Cause of Action.

127.

The State controlled and had a duty to use care in the control of the working conditions at Zonolite Company's and W. R. Grace's facilities in Lincoln County. Given the hazardous conditions observed at the facilities for many years, it was likely that Zonolite Company and Grace would harm Susan McDowell and others if not properly controlled.

128.

The State failed to exercise reasonable care relating to its control of Zonolite Company and Grace by allowing them to continue operating the hazardous facilities for decades and by allowing and assisting with the concealment of the dangerous nature of

the operation.

129.

The State had a nondelegable duty to protect Susan McDowell and other members of the public from abnormally dangerous hazards and emissions from the Zonolite Company and Grace mine in Lincoln County. The State breached its duty and conspired with Zonolite Company and Grace to avoid safety regulations the State had detected and observed for decades. The State acquiesced in the companies' consistently exposing humans to deadly asbestos.

130.

As a direct and proximate result of the State's failure to control Zonolite Company and Grace and the State's decision to leave mill safety entirely in the hands and under the authority of Zonolite Company and W. R. Grace, the State is vicariously liable and jointly and severally liable for Zonolite Company's and Grace's actions and unlawful conduct that caused the asbestos human health hazard and Susan McDowell's mesothelioma.

131.

The State is therefore responsible for Susan McDowell's mesothelioma, her excruciatingly painful death, and the damages sustained by her, her loved ones and her estate.

## EIGHTH CAUSE OF ACTION

(Acting in Concert with Grace and Zonolite Company - Against the State of Montana)

Plaintiff realleges paragraphs 1 through 131 of the Seventh Cause of Action and adopts the same as if fully set forth in this Eighth Cause of Action.

132.

The State acted in concert with Grace and Zonolite Company concerning the asbestos human health hazard in Libby and Lincoln County, Montana thereby causing the public, workers, their families, and Susan McDowell to be exposed to dangerous asbestos.

133.

By virtue of said concerted action with Zonolite Company and W. R. Grace, the State is jointly and severally liable for the conduct of said companies in bringing about Susan McDowell's mesothelioma and death.

134.

As a direct and proximate result of said unlawful concerted action between the State and W. R. Grace, Susan McDowell contracted mesothelioma and experienced an excruciatingly painful death.  As a direct and proximate result of said unlawful concerted action, Susan McDowell, her loved ones and her estate sustained damages as herein alleged.

## NINTH CAUSE OF ACTION

(Negligence - Against Libby Public Schools, Public School District #4

and Asa Wood Elementary School)

Plaintiff realleges paragraphs 1 through 134 of the Eighth Cause of Action and adopts the same as if fully set forth in this Ninth Cause of Action.

135.

At all times pertinent herein, Libby Schools had a continuing duty to children who attended Asa Wood Elementary School, including Susan McDowell, to exercise

reasonable care for their health, welfare and safety.

136.

During the time Susan McDowell was an elementary student at Asa Wood Elementary School, defendants Libby Public Schools, Public School District #4 and Asa Wood Elementary School knew the Asa Wood Elementary School grounds were contaminated with asbestos laden vermiculite. Defendants Libby Public Schools, Public School District #4 and Asa Wood Elementary School also knew or should have known that asbestos contaminated vermiculite was and is extremely hazardous and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

137.

Susan McDowell was a minor child and ignorant of the nature and extent of the life threatening human health risks associated with the exposure to abnormally dangerous asbestos fibers and asbestos contaminated vermiculite on Asa Wood Elementary School grounds.

138.

Defendants Libby Public Schools, Public School District #4 and Asa Wood Elementary School breached their duty of reasonable care for the health, welfare and safety of Susan McDowell. Defendants Libby Public Schools, Public School District #4 and Asa Wood Elementary School failed to provide Susan McDowell any warning of or protection against asbestos fibers and asbestos contaminated vermiculite on school grounds.

COMPLAINT AND JURY DEMAND - 39

139.

The negligence and wrongful conduct of Libby Public Schools, Public School District #4 and Asa Wood Elementary School, in addition to that herein above alleged, consisted of:

(a) Creating hazardous and unreasonably dangerous conditions associated with asbestos contaminated vermiculite on school grounds;

(b) Failing to properly inspect for unsafe and hazardous conditions on school grounds;

(c) Failing to correct unsafe and hazardous conditions associated with asbestos contaminated vermiculite on school grounds;

(d) Failing to warn of the dangers of asbestos contaminated vermiculite on school grounds;

(e) Failing to provide proper safeguards against exposure to asbestos on school grounds;

(f) Improper and negligent supervision, which permitted the hazardous and dangerous exposure to asbestos to persist;

(g) Failing to disseminate asbestos hazard information to students and their families;

(h) Failing to warn students and their families of the hazards associated with exposure to asbestos; and/or

(I) Failing to inform students and their families of the extreme asbestosis, cancer and mesothelioma risk of asbestos.

140.

As a result of her exposure to asbestos fibers and asbestos contaminated vermiculite on Asa Wood Elementary School grounds, Susan McDowell contracted mesothelioma and suffered an excruciatingly painful death.

141.

As a direct, proximate and legal result of the negligent and unlawful conduct of the Libby Public Schools, Public School District #4 and Asa Wood Elementary School, and/or their agencies, agents, servants and employees, Susan McDowell contracted mesothelioma and suffered an excruciatingly painful death.  Said unlawful conduct was a proximate cause of her asbestos related mesothelioma and the resulting damages to her, her estate, her husband Timothy S. McDowell and their beloved children.

## TENTH CAUSE OF ACTION

(Intentional and Malicious Acts or Omissions - Against All Defendants)

Plaintiff realleges paragraphs 1 through 141 of the Ninth Cause of Action and adopts the same as if fully set forth in this Tenth Cause of Action.

142.

Susan McDowell's mesothelioma and death were caused by the defendants' intentional and malicious acts and omissions.

143.

The defendants knew of facts and intentionally disregarded facts creating a high probability of injury to Susan McDowell; deliberately proceeded to act in conscious and intentional disregard of high probability of injury to Susan McDowell; and deliberately proceeded to act with indifference to the high probability of injury to her.

COMPLAINT AND JURY DEMAND - 41

144.

As a direct and proximate result of the defendants' intentional and malicious acts or omissions, Susan McDowell contracted mesothelioma and experienced an excruciatingly painful death and damages. Said unlawful conduct was a direct and proximate cause of Susan McDowell's asbestos related mesothelioma and the resulting damages to her, her estate, her husband Timothy S. McDowell and their beloved children.

## ELEVENTH CAUSE OF ACTION

### (Wrongful Death)

Plaintiff realleges paragraphs 1 through 144 of the Tenth Cause of Action and adopts the same as if fully set forth in this Eleventh Cause of Action.

145.

As a direct and proximate result of the unlawful conduct of the Libby Schools, Susan McDowell died of mesothelioma, on November 6, 2012.

146.

Susan McDowell's loved ones, including her husband Timothy McDowell and their beloved children, have thereby been deprived of her society, companionship, comfort, protection, and support, and have suffered great sorrow, grief, and mental anguish by reason of the defendants' unlawful conduct that caused her death.

## COMPENSATORY SURVIVAL DAMAGES

147.

As a direct result of the defendants' unlawful conduct, the plaintiff and the Estate of Susan McDowell have incurred medical expenses.

**COMPLAINT AND JURY DEMAND - 42**

148.

As a direct result of the defendants' unlawful conduct, the plaintiff and Susan McDowell experienced lost earnings and loss of earning capacity.

149.

As a direct result of the defendants' unlawful conduct, Susan McDowell experienced great physical and mental pain and suffering.

150.

As a direct result of the defendants' unlawful conduct, Susan McDowell suffered loss of and damage to her established course and way of life.

151.

As a direct result of the defendants' unlawful conduct, the plaintiff and Susan McDowell sustained damages relating to relating to their emotional distress.

## DAMAGES FOR WRONGFUL DEATH

152.

As a direct and proximate result of the unlawful conduct of the defendants, as herein alleged, Susan McDowell's surviving spouse, plaintiff Timothy McDowell, and their children and other qualifying close family members have been deprived of her society, companionship, comfort, protection, and support. Also as a direct and proximate result of said unlawful conduct, they have also suffered great sorrow, grief, and mental anguish by reason of her excruciatingly painful suffering and death.

## PUNITIVE AND EXEMPLARY DAMAGES

153.

The defendants' unlawful conduct was so malicious, wanton, and egregious as to justify the imposition of punitive or exemplary damages against defendants other than the State of Montana, Libby Public Schools, Public School District #4 and Asa Wood Elementary School.  Punitive damages should be awarded in an amount sufficient to punish said non-governmental defendants, to serve as an example to them and other similarly situated entities, to discourage and to prevent future conduct of the kind engaged in by the non-governmental defendants, and to demonstrate conclusively that conduct of this kind is unacceptable and intolerable in our society.

## JURY DEMAND

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment for damages as follows:

1.     Reasonable compensation for medical and related expenses;

2.     Reasonable compensation for lost earnings and loss of earning capacity;

3.     Reasonable compensation for mental and physical pain and suffering;

4.     Reasonable compensation for loss of enjoyment of life;

5.     Reasonable compensation for emotional distress;

6.     Reasonable compensation to Susan McDowell's loved ones who suffered loss of society, companionship, comfort, protection, support, and  great sorrow, grief, and mental anguish by reason of her excruciatingly painful suffering and death

7.    Punitive damages against defendants other than the State in sufficient

amount to punish and to serve as example that such conduct is intolerable.

8.    Costs and disbursements incurred herein; and

9.    Such other and further relief as to the court may seem just.

DATED this ___14___ day of April, 2014.

LUCERO & GEORGE, LLP

LEWIS, SLOVAK & KOVACICH, P.C.

BY: _____

Mark M. Kovacich
P. O. Box 2325
Great Falls, MT  59403
Attorneys for Plaintiff

COMPLAINT AND JURY DEMAND - 45